CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 2 0 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSE FRANCISCO NOESI, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 7:05-CV-00451 |
| ) | |
| B.A. BLEDSOE, Warden, et al., ) | By: Hon. Michael F. Urbanski |
| Respondent. ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Petitioner, Jose Francisco Noesi, has petitioned the court for a writ of habeas corpus under 28 U.S.C. § 2241 challenging the disciplinary action taken against him by the BOP as a result of a November 25, 2003 incident, as well as the manner in which the Bureau of Prisons ("BOP") calculates his good conduct time. This matter is before the court for report and recommendation on respondents' motion for dismissal of the petition.

For the reasons outlined below, it is the recommendation of the undersigned that respondents' motion be granted and the petition be dismissed. First, petitioner's disciplinary hearing complied with constitutional due process rights as outlined by Wolff v. McDonnell, 418 U.S. 539 (1974). Additionally, the disciplinary hearing was impartial, and the record contains ample evidence to support the findings of the disciplinary committee. Finally, the Fourth Circuit held in Yi v. Federal Bureau of Prisons, 412 F.3d 526 (4th Cir. 2005), that the Bureau of Prison's interpretation of 18 U.S.C. § 3624, awarding good conduct time based on time served and not sentence imposed, was reasonable.

### I

Petitioner is currently housed at the United States Penitentiary in Lee County, Virginia ("U.S.P. Lee"), serving a 168 month sentence to be followed by five (5) years of supervised

release. Petition for Writ of Habeas Corpus, July 27, 2005 (hereinafter Habeas Petition 2), at 1. An incident report was filed on November 25, 2003 charging petitioner with violations of Code 101, assault on staff, and Code 113, possession of narcotics, alleging as follows. Resp. Ex. A, Attach. 2. On November 25, 2003 at 11:05 a.m., while conducting a visual search in the Lieutenant's office, Lieutenant Pitt instructed petitioner to remove a black wrist band off of his right wrist. Id. After removing the wrist band and handing it to the Lieutenant, petitioner charged the toilet with an item cuffed in his left hand. Id. The Lieutenant attempted to stop petitioner, but the petitioner charged him and struck him on the left shoulder area. Id. The report indicates that petitioner threw a half inch long item wrapped in white paper into the toilet. Id. As the Lieutenant tried to retrieve the item by reaching into the toilet, the petitioner flushed the toilet and grabbed the Lieutenant by his right shoulder, pulling him away from the toilet. Id.

Petitioner presents a markedly different account of the events of November 25, 2003. Petitioner alleges that he was ordered to do a strip search in the holding cell of the Lieutenant's office and after stripping, while the Lieutenant was searching petitioner's discarded clothing, he turned his back and began to urinate in the toilet. Petition for Writ of Habeas Corpus, July 14, 2005 (hereinafter Habeas Petition 1), at 4. Petitioner stated that he had not been to the bathroom the entire time he had been out in the yard previously. Resp. Ex. A, Attach. 5 at 1. After finding no contraband in petitioner's clothing, Lt. Pitt waited until petitioner flushed the toilet before charging him screaming, "What you doing? You flushing? You flushing?" Habeas Petition 1 at 4. Petitioner alleges Lt. Pitt pushed him, and petitioner inadvertently grabbed the Lieutenant's arm to prevent himself from falling. Id. at 4. After other officers arrived on the scene, Lt. Pitt yelled that petitioner was not going to get away with flushing the toilet, and that he was going to

be written up on an assault and possession of narcotics charges. Id. at 4.

The incident report was delivered to petitioner on November 25, 2003, the day of the incident. Resp. Ex. A, Attach. 2. The report and investigation of the incident was suspended pending referral to the FBI for a criminal investigation into the matter. Id. at ¶ 25; Resp. Ex. A, Attach. 5 at 3. No criminal prosecution resulted, and the matter was released for administrative processing on September 21, 2004. Resp. Ex. A, Attach. 2. Petitioner was then advised of his rights, given a copy of the incident report, and read the incident report in its entirety. Id. at ¶ 23, 24 (amended). At that time, petitioner gave the following statement: "It was just a misunderstanding. I'm not guilty." Id. at ¶ 24 (amended). The matter was referred for a disciplinary hearing. Id. at ¶ 27.

The unit disciplinary committee ("UDC") commenced a disciplinary hearing on September 24, 2004. Resp. Ex. A, Attach. 2 at ¶ 21. Based on the severity of the charges, the UDC referred the incident to the discipline hearing officer ("DHO") for further hearing. Id. at ¶ 19. The UDC recommended, upon a finding of guilt, a loss of good conduct time. Id. at ¶ 20. A notice of disciplinary hearing before the DHO was filed on September 24, 2004. Resp. Ex. A, Attach. 3. Petitioner indicated he wished to have CSW McClain as his staff representative, and that he wished to call witnesses, though he later waived his right to call witnesses. Id. The petitioner was further advised of his rights that same day. Resp. Ex. A, Attach. 4.

The DHO hearing was held on October 7, 2004 at 1:20 p.m. Resp. Ex. A, Attach 5 at 1. Petitioner's staff representative CSW McClain appeared and stated on petitioner's behalf: "We were going to put him in for a lesser security transfer. He has not been a management problem." Id. at 1. Petitioner denied the charges against him, and stated he understood his rights and that

3

his rights had been upheld. Id. at 1. Petitioner related his account of the events of November 25, 2003, stating he does not use or sell drugs and that he doesn't need money. Id. at 1. Petitioner admitted that he flushed the toilet during the incident. Id. at 1.

After hearing testimony and examining all evidence presented at the hearing, the DHO found that petitioner committed violations of Code 224, assault, and Code 307, refusing an order, when petitioner failed to comply with staff orders to submit to a visual search by flushing contraband down the toilet, subsequently charging and striking staff. Resp. Ex. A, Attach. 5 at 2-3. The DHO found petitioner's statement to be a fabricated account of the events of the incident, created in an attempt to relieve him of the consequences associated with the prohibited acts. Id. at 3. The DHO reduced the charge of Code 101, serious assault, to Code 224, minor assault, and dropped all charges of Code 113, possession of narcotics, as this charge was not supported by evidence. Id. at 3. Petitioner was further found guilty of a violation of Code 307, refusing an order. Id. at 3.

Sanctions for the violation of Code 307 included loss of fourteen (14) days of good conduct time, loss of visiting privileges for six (6) months, non-contact visiting for six (6) months. Resp. Ex. A, Attach. 5 at 3-4. Sanctions for the violation of Code 224 included loss of twenty-seven (27) days of good conduct time, and thirty (30) days of disciplinary segregation suspended pending 180 days of clear conduct. Id. at 3-4. Petitioner was advised of the DHO's findings, evidence relied on, action and reasons for the action, and right to appeal, and a copy of the report was given to the petitioner on December 7, 2004. Id. at 4.

Petitioner has filed two petitions for writs of habeas corpus under 28 U.S.C. § 2241. The first petition filed on July 14, 2005 against Warden Bledsoe, DHO Davis-Crum, Administrator

Watts, and Lt. Pitt,[1] alleges petitioner has been denied due process rights due to a disciplinary action taken against him resulting in loss of good conduct time. Habeas Petition 1 at 4. The second petition filed July 27, 2005 against Warden Bledsoe alleges the BOP's calculation of good conduct time violates the congressional intent of 18 U.S.C. § 3624(b). Habeas Petition 2 at 3. This report and recommendation addresses both § 2241 claims.

II

Plaintiff first claims § 2241 habeas relief based on the disciplinary action taken against him, resulting in the loss of good conduct time. Petitioner claims violations of his constitutional due process rights and other federally protected rights, in as much as the DHO found him guilty of the alleged violation based only on "some facts" which were neither reasonable nor believable, the DHO unlawfully amended the incident report, and the DHO hearing lacked impartiality because the reporting officer was present. Petitioner's habeas claims regarding this disciplinary action must fail because his disciplinary proceeding complied with both constitutional standards of due process and the standards outlined by the BOP, and because his DHO hearing was impartial.

### A. BOP's Inmate Disciplinary Process

The BOP's disciplinary hearing process is outlined in program statement 5270.07 ("P.S. 5270.07"). Resp. Ex. A, Attach. 1; accord 28 C.F.R. §§ 541.14 - 541.21. When a staff member

---

[1] Petitioner erroneously filed his first habeas petition against DHO Davis-Crum, Administrator Watts, and Lt. Pitt. The appropriate respondent in a habeas corpus petition is the petitioner's immediate custodian, the warden of the facility in which petitioner is incarcerated. Scott v. United States, 586 F. Supp. 66 (E.D. Va. 1984). Thus, in this case, the only proper respondent is Warden Bledsoe. Accordingly, respondents Davis-Crum, Watts and Pitt must be dismissed.

5

witnesses or has reasonable belief that a violation of BOP regulations has been committed by an inmate, the staff member prepares an incident report. Id. at chpt. 5, p. 1. An incident report must be filled out in situations involving prohibited acts in the 100 code (greatest severity) and 200 code (high severity) levels. Id. at chpt. 5, p. 1. Such violations must be referred to the UDC and a final disposition can only be made by the DHO. Id. at chpt. 5, p. 1.

Usually, an investigating officer is appointed and completes the investigation of the incident within twenty-four (24) hours. Resp. Ex. A, Attach. 1 at chpt. 5, p. 2. However, if the incident is the subject of a potential criminal prosecution, the investigating officer suspends the investigation until the agency responsible for the criminal investigation advises that staff may proceed. Id. at chpt. 5, p. 2. The investigating officer provides a copy of the incident report to the inmate at the start of the investigation, usually within twenty-four (24) hours, noting the date and time the inmate received it. Id. at chpt. 5, p. 3, chpt. 6, p. 1. The investigator must also read the charges to the inmate and advise the inmate of his right to remain silent. Id. at chpt. 5, p. 3. The inmate is given the opportunity to make a statement on his behalf. Id. at chpt. 5, p. 3. The investigating officer then thoroughly investigates the incident and records all steps and actions taken on the incident report. Id. at chpt. 5, p. 3.

Upon completion of the investigation, an initial hearing is held by the UDC within a three (3) day period. Resp. Ex. A, Attach. 1 at chpt. 6, p. 1. The inmate has a right to appear at this hearing, make a statement and present documentary evidence on his behalf. Id. at chpt. 6, p. 2. The UDC must make its decision based on at least some facts,[2] or if there is conflicting evidence,

---

[2] As noted in P.S. 5270.07, "[t]he phrase 'some facts' refers to facts indicating the inmate did commit the prohibited act." Resp. Ex. A, Attach. 1 at chpt. 6, p. 2.

6

its decision must be based on the greater weight of the evidence. Id. at chpt. 6, p. 2. The UDC must refer all serious charges to the DHO, along with relevant documents, reasons for the referral, as well as recommendations for an appropriate disposition if the DHO finds the inmate has committed the acts charged or similar prohibited acts. Id. at chpt. 6, p. 1, 3-4.

When charges are referred to the DHO, the inmate is advised of the rights afforded him at a DHO hearing, and the inmate chooses a staff representative. Resp. Ex. A, Attach. 1 at chpt. 6, p. 4, chpt. 7, p. 2. In order to ensure impartiality, the DHO may not be the reporting officer, investigating officer, UDC member, or a witness to the incident, or play any significant role in having the charges referred to the DHO. Id. at chpt. 7, p. 1. At the DHO hearing, an inmate has the right to be present, make a statement and present documentary evidence on his behalf. Id. at chpt. 7, p. 3-4. An inmate may also call witnesses, provided it will not jeopardize institutional or individual security. Id. at chpt. 7, p. 3-4. The DHO must consider all evidence presented at the hearing, basing its decision on some facts, and if there is conflicting evidence, based on the greater weight of the evidence. Id. at chpt. 7, p. 5. The DHO must find either that the inmate committed the prohibited act and/or similar acts, or that the inmate did not commit the prohibited act charged or a similar prohibited act. Id. at chpt. 7, p. 5.

The DHO then prepares a record of the proceeding, documenting the advisement of the inmate's rights, the DHO's findings and decision, the evidence relied on, and the sanctions imposed. Resp. Ex. A, Attach. 1 at chpt. 7, p. 8. The DHO must provide the inmate a written copy of the decision and disposition within ten (10) days of the DHO's decision. Id. at chpt. 7, p. 8.

7

Case 7:05-cv-00451-SGW-mfu   Document 27   Filed 01/20/06   Page 7 of 15   Pageid#: 184

## B. Due Process Rights In Disciplinary Hearings

While convicted prisoners relinquish many rights upon incarceration, the due process clause of the Fourteenth Amendment requires several procedural safeguards before an inmate may be punished by the loss of good conduct time for violating prison disciplinary rules. Wolff v. McDonnell, 418 U.S. 539, 555-58 (1974). To comply with due process requirements, prison officials must provide the inmate with: (1) advance written notice of the charge against him, (2) a written record of the disciplinary committee's findings and the evidence relied on in convicting him, and (3) in limited circumstances, the right to call witnesses. Id. at 563-66. The BOP's P.S. 5270.07 outlines its disciplinary procedures, which comport with due process requirements as noted in Wolff. See Resp. Ex. A, Attach. 1.

The Supreme Court has also held that the revocation of good conduct time does not comport with the minimum requirements of due process unless the findings of the prison disciplinary board are supported by some evidence in the record. Superintendent v. Hill, 472 U.S. 445, 454 (1985). The Court specifically refused to require that facts in support of prison disciplinary charges be proven beyond a reasonable doubt, even where earned good conduct time is at risk. Id. at 456 ("Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.") (internal citations omitted).

If there is some evidence from which the conclusion of the disciplinary board is deduced, Hill's evidentiary standard is met. Id. at 455. A reviewing court's determination of whether a prison disciplinary hearing officer's findings comport with the Hill standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or

8

weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached" by the hearing officer. Id. at 455-56.

The BOP has adopted an even higher evidentiary standard, as outlined in P.S. 5270.07. The BOP procedures require that the hearing officer base his or her decision on the greater weight of the evidence where the evidence is conflicting. Resp. Ex. A, Attach. 1 at chpt. 6, p. 2, chpt. 7, p. 5. The greater weight of the evidence, as referred to in P.S. 5270.07, refers to the merits of the evidence, not to its quantity nor to the number of witnesses testifying. Id. at chpt. 6, p. 2.

Petitioner's disciplinary hearings complied with due process requirements as outlined by the Supreme Court and the BOP. Petitioner received a copy of the incident report on November 25, 2003, the date of the incident and well in advance of either disciplinary hearing. See Resp. Ex. A, Attach. 2. The investigating officer advised petitioner of his rights, read the charges to petitioner, and gave petitioner another copy of the incident report on September 22, 2004, after the conclusion of the pending criminal investigation. Id. Petitioner was given the opportunity to call witnesses but elected not do so. Id. A hearing before the UDC was held on September 24, 2004. Id. The case was then referred to the DHO, and petitioner was noticed of the subsequent DHO hearing. Resp. Ex. A, Attach. 3. Petitioner again waived his right to call witnesses. Id. A DHO hearing was held on October 7, 2004. Resp. Ex. A, Attach. 5. A report of the disciplinary hearing, including the DHO's findings and evidence relied on, was delivered to the petitioner on December 7, 2004. Id.

Because petitioner denies the charges against him, the evidence in this case is conflicting, and BOP procedures require the DHO to have rendered his decision based on the greater weight

9

of the evidence. However, the Supreme Court in Hill only requires that a reviewing court determine whether there is *any evidence* in the record to support the conclusion reached by the disciplinary board. Hill, 472 U.S. at 455-56 (emphasis added). This court finds ample evidence in the record to support the conclusion reached by the DHO, both by due process standards and by the standards outlined in P.S. 5270.07.

The DHO relied upon the reporting officer's statement of the events in question in his determination of guilt. Resp. Ex. A, Attach. 5. The DHO questioned petitioner's attempt to flush the toilet during a search for contraband if, in fact, he was not flushing contraband. Id. The DHO further wondered why petitioner would not have asked permission to flush the toilet during the search, if indeed petitioner had just used the bathroom as he claims to have done. Id.

This court finds ample evidence in the record to support the DHO's finding that petitioner's account of the incident is incredible. The DHO considered a November 25, 2003 memorandum written by Lt. Pitt in its determination. Resp. Ex. A, Attach. 5. In this memorandum, Lt. Pitt documents his discovery of masking tape attached to a piece of dental floss in petitioner's living quarters. Id. Lt. Pitt explains that this is a typical way inmates hide contraband behind a locker or in a toilet. Id. However, as Lt. Pitt relates, a search of the petitioner's living quarters did not uncover any contraband, suggesting petitioner already retrieved the contraband and had it on his person. Id. Lt. Pitt had reason to suspect petitioner was concealing contraband and flushed it down the toilet during the search.

The DHO also considered the injury assessment of petitioner Noesi, completed by medical staff after the incident in question. Resp. Ex. A, Attach. 5. According to the assessment, Noesi stated as to how he was injured: "I was trying to throw away a piece of gum and the Lt.

10

stopped me." This statement clearly contradicts the statement he gave at the hearing as to his attempt to use the bathroom during the search. Id.

Such evidence in the record supports the reporting officer's account of the events. As such, the DHO's finding of guilt comports with standards outlined by both the Supreme Court and the BOP.

### C. Right to an Impartial Disciplinary Hearing Officer

Petitioner further claims his rights were violated because Lt. Pitt, the reporting officer, was present at the DHO hearing. Pl.'s Traverse to Resp. to Show Cause 2. However, the Code of Federal Regulations, as well as P.S. 5270.07, allow the DHO to call witnesses who have information directly relevant to the charges and who are reasonably available. 28 C.F.R. § 541.17(c); Defs.' Resp. Ex. A, Attach. 1 at chpt.7, p. 3. Because Lt. Pitt witnessed the incident in question, the DHO properly called him as a witness at the disciplinary hearing. Lt. Pitt did not serve on the disciplinary committee or in any way bias the proceedings.

Petitioner also alleges the DHO improperly amended his incident report by changing the date. Pl.'s Traverse to Resp. to Show Cause 2-3. To ensure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charges referred to the DHO. 28 C.F.R. § 541.16(b). Petitioner claims that by changing the date, the DHO participated in the essential aspects of preparing the report. However, petitioner's argument is nonsense. The DHO was not the reporting officer, investigating officer, a UDC member or witness to the incident in question. Furthermore, the DHO did not play any role in having the charges referred to the DHO. The record is void of any evidence to suggest the hearing was anything but impartial.

11

To the extent petitioner is complaining about the DHO's finding of guilt on charges that were not originally charged in the incident report, this claim must also be dismissed. After consideration of the evidence, the DHO may find that the inmate committed the prohibited act charged *and/or a similar prohibited act* if reflected in the incident report. 28 C.F.R. § 541.17(f)(1) (emphasis added); Resp. Ex. A, Attach. 1, chpt. 7, p. 5. Based on the description of the incident as noted on the incident report, as well as other evidence presented at the hearing, the DHO found that the petitioner violated less serious charges, namely Code 224, minor assault, and Code 307, refusing an order, than originally charged. The description of the incident in the incident report gave petitioner ample notice of these potential charges.

Petitioner's claims that his hearing lacked impartiality due to the DHO's amendment to the incident report and Lt. Pitt's presence at the hearing are without merit. Therefore, his claims should be dismissed.

### III

Petitioner Noesi also filed a later § 2241 petition, asserting that the BOP calculates good conduct time ("GCT") in a manner which is contrary to 18 U.S.C. § 3624. Section 3624 states:

> [A] prisoner who is serving a term of imprisonment of more than 1 year [,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1).

Petitioner claims his federal sentence is in violation of the laws of the United States Constitution because he is forced to serve more than eighty-five percent (85%) of his term of 168

12

months. Habeas Petition 2 at 2. Petitioner claims that GCT should be calculated based on the sentence imposed, not time actually served.

In support of this notion, petitioner relies on Moreland v. Bureau of Prisons, 363 F. Supp. 2d 882 (S.D. Tex. 2005), rev'd, No. 05-20347, 2005 U.S. App. LEXIS 25045 (5th Cir. November 10, 2005). See Habeas Petition 2 at 3-4. The district court in Moreland did, in fact, find that the BOP's interpretation of the statute, calculating GCT based on time served, violated the statute's plain meaning, congressional intent and the rule of lenity; however, the Fifth Circuit recently reversed the district court's ruling, holding that § 3624 unambiguously describes how GCT credits are to be calculated, which is at the end of each year the prisoner serves. Moreland v. Bureau of Prisons, 2005 U.S. App. LEXIS 25045, at *15.

Even more relevant to the case at hand is the Fourth Circuit's opinion in Yi v. Federal Bureau of Prisons, 412 F.3d 526 (4th Cir. 2005). In Yi, the Fourth Circuit dealt with the issue of whether GCT should be awarded based on the sentence imposed or the time actually served. Yi, 412 F.3d 526. Contrary to the Fifth Circuit's decision in Moreland, the Fourth Circuit held that the phrase "term of imprisonment" as used in § 3624 is ambiguous. Id. at 533. However, the court gave deference to the BOP's interpretation of the statute, finding the BOP reasonably interpreted the statute so as to require the calculation of GCT based upon the inmate's time served. Id. at 534; see also Pacheco-Camacho v. Hood, 272 F.3d 1266 (9th Cir. 2001); Graves v. Bledsoe, 334 F. Supp. 2d 906 (W.D. Va. 2004). The Yi court found "to award credit for time not served would conflict with Congress' intent that prisoners 'earn' credit under the GCT statute by 'displaying exemplary compliance with institutional disciplinary regulations' during the year." Id. at 532.

13

Following the Fourth Circuit in Yi, this court finds the BOP's interpretation of 18 U.S.C. § 3624(b) a reasonable one. Petitioner's proposed interpretation of the statute is inconsistent with the language of the statute as a whole. The statute requires GCT to be awarded to those prisoners who have displayed exemplary compliance with disciplinary regulations. See 18 U.S.C. § 3624(b). Were petitioner's interpretation of the statute to be afforded, GCT would be awarded before a prisoner had the chance to display compliance with disciplinary regulations. Petitioner's interpretation is illogical and flies in the face of the majority of courts to have addressed this issue. Thus, petitioner's contention that the BOP calculates GCT in a manner contrary to the statutory directive must be dismissed.

## IV

It is the recommendation of the undersigned that petitioner's claims regarding disciplinary action taken against him on November 25, 2003, and the BOP's calculation of good conduct time be dismissed for the reasons outlined in this report. Petitioner's disciplinary hearing was impartial and complied with requirements of due process. Additionally, the Fourth Circuit has determined that the BOP's interpretation of 18 U.S.C. § 3624, requiring GCT to be calculated based on time served, is reasonable.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28

14

U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 20 day of January, 2006.

                                          Michael F. Urbanski
                                          United States Magistrate Judge